# Exhibit E

# Oversight Organization Mandate Addendum

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
)
) Docket No. 2:20-CR-11
v. )
)
)
PRACTICE FUSION, INC., )
)
Defendant. )
)

**Oversight Organization Mandate Addendum**

1.      **Oversight Organization**: As a condition of its Deferred Prosecution Agreement Practice Fusion, Inc. ("Practice Fusion") is required to retain an oversight organization (the "Oversight Organization") for three (3) years from the date of appointment of the Oversight Organization.

2.      **Selection of Oversight Organization Candidates, Timing**. Practice Fusion agrees to retain an Oversight Organization upon selection by the Office of the United States Attorney for the District of Vermont (the "Office") whose powers, rights, and responsibilities are set forth herein. Within thirty (30) calendar days of the Effective Date of the Deferred Prosecution Agreement ("DPA"), PRACTICE FUSION shall provide to the Office a list of two (2) qualified candidates to serve as the Oversight Organization. PRACTICE FUSION shall identify which entity it would like to select as the Oversight Organization and provide a basis for such preference. Within thirty (30) calendar days of receiving the final list of qualified Oversight Organization candidates from PRACTICE FUSION, the Office shall either agree or disagree with PRACTICE FUSION's selection, and notify PRACTICE FUSION in writing of whether it concurs with PRACTICE FUSION's selection of the Oversight Organization or whether the alternate must be

used instead. Should the Office find none of the initial list of Oversight Organization candidates provided by PRACTICE FUSION acceptable it shall notify PRACTICE FUSION and PRACTICE FUSION shall consult with the Office and provide an additional list of candidates from which the Office may select an Oversight Organization. The Office shall consult with PRACTICE FUSION using its best efforts to select and appoint a mutually acceptable Oversight Organization (and any replacement Oversight Organization, if required) as promptly as possible. Within thirty (30) calendar days of receiving written notice of the selection of the Oversight Organization, PRACTICE FUSION shall retain the Oversight Organization and finalize all terms of engagement, supplying a copy of an engagement letter to the Office. In the event that the Office is unable to select an Oversight Organization acceptable to PRACTICE FUSION, the Office shall have the sole right to select an Oversight Organization (and any replacement Oversight Organizations), if required. To ensure the integrity of the Oversight Organization, the Oversight Organization must be independent and objective, and the following persons shall not be eligible as either an Oversight Organization or an agent, consultant or employee of the Oversight Organization: (a) any person currently or previously employed by PRACTICE FUSION (as used herein PRACTICE FUSION shall include any affiliates, subsidiaries, parent companies, employees, officers or directors, or otherwise related entities); any current or former PRACTICE FUSION board member; any person who holds an interest in PRACTICE FUSION, or has a relationship with PRACTICE FUSION, its affiliates, related entities, or its employees, officers or directors; or (b) any person who has been directly adverse to PRACTICE FUSION in any proceeding. In addition, PRACTICE FUSION must certify in writing that it will not employ or be affiliated with the Oversight Organization for a period of not less than two years from the date that the Oversight Organization is terminated. The parties shall endeavor to complete the Oversight Organization selection process within sixty

(60) calendar days of the execution of the PRACTICE FUSION Deferred Prosecution Agreement (the "Agreement").

3. **Mandate**: The Oversight Organization shall take steps, as described herein, to provide reasonable assurance that PRACTICE FUSION establishes and maintains compliance systems, controls and processes reasonably designed, implemented and operated to ensure PRACTICE FUSION's compliance with the terms of the Agreement, including the Compliance Addendum set forth under **Exhibit D** to the Deferred Prosecution Agreement, as well as reducing the risk of any recurrence of PRACTICE FUSION's misconduct as described in the Information and Statement of Facts (the "Mandate"). To fulfill the Mandate, the Oversight Organization shall: (i) evaluate the effectiveness of PRACTICE FUSION's processes, procedures and programs to ensure that all sponsored Clinical Decision Support ("Sponsored CDS") programs are operated in compliance with the Anti-Kickback Statute, 42 U.S.C. § 1320a-7(b), any applicable Clinical Quality Measures ("CQM"), any applicable medical guideline or literature upon which any Sponsored CDS may be based, and any other regulations applicable to Sponsored CDSs; (ii) make recommendations regarding such processes, procedures and programs to reasonably ensure such compliance; (iii) assess whether PRACTICE FUSION, in connection with its Sponsored CDSs, complies with the requirements of the AKS, CQMs, medical literature and guidelines, and CDS rules and regulations; (iv) assess PRACTICE FUSION's policies and procedures relating to its Clinical Decision Support Compliance Program; (v) assess PRACTICE FUSION's Board of Directors' and senior management's commitment to, and effective implementation of, CDS compliance procedures; and (vi) make periodic reports concerning the foregoing. The Oversight Organization shall have the authority to take such reasonable steps as, in his or her view, may be necessary to fulfill the Mandate.

4. **Oversight Organization's Work Plan**: The Oversight Organization shall prepare a written work plan (the "Work Plan") within sixty (60) calendar days of being retained. In the Work Plan, the Oversight Organization shall include (i) a description of tasks, activities, and timeline for conducting its initial review of the items encompassed in the Mandate as set forth in Paragraph 3 and generating recommendations for Practice Fusion related to its Sponsored CDS controls, (ii) a timeline for and description of any additional tasks and efforts that it believes are necessary to fulfill the Oversight Organization's Mandate. In creating the Work Plan, the Oversight Organization may develop an understanding of the facts and circumstances surrounding any violations that may have occurred before the date of the Agreement, but shall rely on available information and documents provided by PRACTICE FUSION; and not conduct his or her own inquiry into such violations. The Work Plan also must account for and include the review of proposed Sponsored CDSs, as required in the Compliance Addendum set forth under **Exhibit D** to the Deferred Prosecution Agreement. The Oversight Organization shall submit the Work Plan to PRACTICE FUSION and the Office, which shall in turn provide comments, if any, within thirty (30) calendar days after receipt of the Work Plan. Any disputes between PRACTICE FUSION and the Oversight Organization with respect to the Work Plan shall be decided by the Office in its sole discretion.

5. **Initial Report and Progress Reports**: The Oversight Organization shall issue an initial report within one hundred and twenty (120) calendar days following the approval of the Work Plan (the "Initial Report"). The Initial Report shall include (i) a narrative summary of the scope of the Oversight Organization's review, and (ii) recommendations for Practice Fusion policy or process improvements consistent with the Mandate. Thereafter, the Oversight Organization shall issue reports twice annually ("Progress Reports") until issuance of the Final Report (see

Paragraph 7).  Such Progress Reports shall include (i) a narrative summary of the Oversight Organization's progress to date in achieving the Mandate; (ii) a summary of the current Work Plan, including the current status, projected completion dates and other relevant information concerning the adoption of the Oversight Organization's preexisting recommendations, as well as of any new recommendations the Oversight Organization believes are required; and (iii) any issues, obstacles or difficulties that may prevent the Oversight Organization from achieving the Mandate.  The Oversight Organization shall provide the finished report to the Board of Directors of PRACTICE FUSION and the General Counsel of Allscripts, and contemporaneously transmit copies to the Office.

6. **Recommendation Implementation**: Within ninety (90) calendar days after receiving the Initial Report or a Progress Report, PRACTICE FUSION shall adopt and implement the recommendations in the Initial Report or Progress Report unless, within fourteen (14) calendar days of receiving the Progress Report, PRACTICE FUSION notifies in writing the Oversight Organization and the Office of any recommendations that PRACTICE FUSION considers unduly burdensome, inconsistent with applicable law or regulation, impractical, or otherwise inadvisable. With respect to any such recommendation, PRACTICE FUSION need not adopt that recommendation within the ninety (90) calendar days of receiving the report but shall propose in writing to the Oversight Organization and the Office an alternative policy, procedure or system designed to achieve the same objective or purpose.  In the event PRACTICE FUSION and the Oversight Organization are unable to agree on an acceptable alternative proposal, the Office shall in its sole discretion, determine what measures PRACTICE FUSION shall undertake, and may consider the Oversight Organization's recommendation and PRACTICE FUSION's reasons for not adopting the recommendation in determining whether PRACTICE FUSION has fully

complied with its obligations under the Agreement. Pending such determination, PRACTICE FUSION shall not be required to implement any contested recommendation(s). With respect to any recommendation that the Oversight Organization determines cannot reasonably be implemented within sixty calendar days after receiving the report, the Oversight Organization may extend the time period for implementation with prior written approval of the Office.

7.  **Final Report**: Upon the termination of the Oversight Organization in accordance with Paragraph 1, the Oversight Organization shall issue a final report (the "Final Report") summarizing the tasks performed under the Work Plan and the results achieved. The Final Report shall also include a narrative summary of the Oversight Organization's overall efforts, discuss any outstanding tasks, and provide future recommendations designed to ensure that PRACTICE FUSION remains compliant with the Anti-Kickback Statute and that its CDS programs are medically appropriate, commercially neutral, and consistent with all applicable CQMs, medical literature and guidelines, and CDS rules and regulations after the expiration of the Oversight Organization. The Oversight Organization shall provide the Final Report to the Board of Directors of PRACTICE FUSION and contemporaneously transmit copies to the Office. Any objections to the Final Report, by the Office, Practice Fusion, or the Oversight Organization shall follow the dispute resolution procedures identified in Paragraph 8 herein.

8.  **Dispute Resolution:** Within ninety (90) calendar days after receiving a Progress Report, PRACTICE FUSION shall adopt and implement the recommendations in the Progress Report unless, within fourteen (14) calendar days of receiving the Progress Report, PRACTICE FUSION notifies in writing the Oversight Organization and the Office of any recommendations that PRACTICE FUSION considers unduly burdensome, inconsistent with applicable law or regulation, impractical, or otherwise inadvisable. With respect to any such recommendation,

PRACTICE FUSION need not adopt that recommendation within the ninety (90) calendar days of receiving the report but shall propose in writing to the Oversight Organization and the Office an alternative policy, procedure or system designed to achieve the same objective or purpose. In the event PRACTICE FUSION and the Oversight Organization are unable to agree on an acceptable alternative proposal the Office shall in its sole discretion, determine what measures PRACTICE FUSION shall undertake, and may consider the Oversight Organization's recommendation and PRACTICE FUSION's reasons for not adopting the recommendation in determining whether PRACTICE FUSION has fully complied with its obligations under the Agreement. Pending such determination, PRACTICE FUSION shall not be required to implement any contested recommendation(s). With respect to any recommendation that the Oversight Organization determines cannot reasonably be implemented within sixty calendar days after receiving the report, the Oversight Organization may extend the time period for implementation with prior written approval of the Office.

9. **PRACTICE FUSION's Obligations**: PRACTICE FUSION shall cooperate fully with all reasonable requests from the Oversight Organization consistent with the Mandate. To that end, PRACTICE FUSION shall facilitate the Oversight Organization's access to PRACTICE FUSION's documents, resources, and employees as reasonably necessary for the Oversight Organization to fulfill the Mandate, and not limit such access, except as provided in Paragraph 10. PRACTICE FUSION shall provide the Oversight Organization with access to all information, documents, records, facilities, and employees, as reasonably requested by the Oversight Organization and is reasonably necessary for the Oversight Organization to fulfill the Mandate, and shall use its best efforts to provide the Oversight Organization with access to PRACTICE FUSION's former employees and its third-party vendors, agents, customers, and consultants. Any

7

disputes as to what qualifies as a "reasonable request," what constitutes "reasonably necessary," and/or what is "consistent" with the mandate or fulfilling the mandate shall be determined by the Office in its sole discretion.

10.   **Withholding Access**:  The parties agree that no attorney-client relationship shall be formed between PRACTICE FUSION and the Oversight Organization.  In the event that PRACTICE FUSION seeks to withhold from the Oversight Organization access to information, documents, records, facilities, or current or former employees of PRACTICE FUSION that may be subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or other recognized privileges and protections, or where PRACTICE FUSION reasonably believes production would otherwise be inconsistent with applicable law, PRACTICE FUSION shall work cooperatively with the Oversight Organization to resolve the matter to the satisfaction of the Oversight Organization.  If the matter cannot be resolved, at the request of the Oversight Organization, PRACTICE FUSION shall promptly provide written notice to the Oversight Organization and the Office.  Such notice shall include a general description of the nature of the information, documents, records, facilities or current or former employees that are being withheld, as well as the legal basis for withholding access.  The Office may then consider whether to make a further request for access to such information, documents, records, facilities, or employees.

11.   **Reporting Obligations**:  Any disclosure by PRACTICE FUSION to the Oversight Organization relating to the Anti-Kickback Statute, its implementation regulations, or the Agreement shall not relieve PRACTICE FUSION of any otherwise applicable obligation to truthfully disclose such matters to the Office, the Department of Health and Human Services (including the Centers for Medicare and Medicaid Services, the Office of Inspector General, and/or

8

the Office of the National Coordinator for Health Information Technology) pursuant to the Agreement and its addendums.

12. **Oversight Organization's Discovery of Misconduct**: Should the Oversight Organization discover during the course of its engagement that PRACTICE FUSION, or any of its officers, employees, directors, consultants, vendors, or customers may have committed a violation of the Anti-Kickback Statute, or of any federal or state law the Oversight Organization shall immediately report such potential misconduct to the Office.

13. **Confidentiality:** The Oversight Organization and its staff shall maintain the confidentiality of any non-public information entrusted or made available to the Oversight Organization. The Oversight Organization shall share such information only with the Office, the Department of Justice, the Department of Health and Human Services, and/or any other governmental agency or body identified by the Office.

14. **Information Designation**: PRACTICE FUSION shall clearly identify any portions of any submissions it makes to the Office pursuant to the Compliance Addendum and the Oversight Organization Mandate (including the Oversight Organization's Work Plan, Progress Reports, and Final Report) that it believes are trade secrets, or information that is commercial or financial and privileged or confidential, or otherwise potentially exempt from disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. PRACTICE FUSION shall also be afforded the opportunity to identify any portions of submissions made by the Oversight Organization to the Office that PRACTICE FUSION believes are trade secrets, or information that is commercial or financial and privileged or confidential, or otherwise exempt from disclosure under FOIA. All such information may be exempt from disclosure under FOIA and any other state or federal law or regulation protecting such information from public disclosure and, upon receipt

9

of a request to release any information identified as confidential by PRACTICE FUSION, the Office agrees to provide PRACTICE FUSION reasonable opportunity to respond to any such requests.

15. **Non-Disclosure**: The Oversight Organization shall sign a non-disclosure agreement with PRACTICE FUSION prohibiting disclosure of information received from PRACTICE FUSION to anyone other than to the Office, any governmental agency or body identified by the Office, or anyone hired by the Oversight Organization. Any breach by the Oversight Organization of such non-disclosure agreement shall result in sanctions imposed by the Office in its sole discretion. Within thirty (30) calendar days after the end of the Oversight Organization's term, the Oversight Organization shall either return anything obtained from PRACTICE FUSION, or certify that such information has been destroyed. Anyone hired by the Oversight Organization shall also sign a nondisclosure agreement with similar return or destruction requirements as set forth in this Paragraph 15.

16. **Hiring Authority**: The Oversight Organization shall have the authority to employ legal counsel, consultants, investigators, medical experts, and any other personnel reasonably necessary to assist in the proper discharge of the Oversight Organization's duties. It is explicitly understood and agreed that the Oversight Organization shall be required to retain medical experts in the fields relating to the Sponsored CDSs to ensure the medical appropriateness of the Sponsored CDSs and to ensure that they are commercially neutral and not designed to improperly influence the medical judgment or decision making of any physician and/or health care provider. Any such medical experts retained by the Oversight Organization shall have no conflicts or financial connection to the sponsor of any CDS and/or commercial interest relating to the CDS. Oversight Organization shall be mindful of costs when engaging and retaining outside personnel, and shall

ensure that experts are only engaged as needed in relation to the Sponsored CDSs. Any disputes as to whether a retention of personnel is "reasonably necessary" or whether experts are "only engaged as needed in relation to the Sponsored CDSs" shall be determined by the Office in its sole discretion.

17. **Compensation and Expenses**: Although the Oversight Organization shall operate under the supervision of the Office, the compensation and reasonable expenses of the Oversight Organization, and of the persons hired under his or her authority, shall be paid by PRACTICE FUSION. The Oversight Organization, and any person hired by the Oversight Organization, shall be compensated in accordance with their respective typical hourly rates. The Oversight Organization shall charge a reasonable amount for fees and expenses, and shall submit monthly invoices to PRACTICE FUSION with a reasonable level of detail reflecting all key categories of costs and fees billed. PRACTICE FUSION shall pay bills for compensation and all reasonable expenses promptly, and in any event within thirty (30) calendar days. In addition, within one week after the selection of the Oversight Organization, PRACTICE FUSION shall make available office space, telephone and internet service, and clerical assistance sufficient for the Oversight Organization to carry out his or her duties. PRACTICE FUSION may bring any disputed costs or bills to the Office's attention for purposes of facilitating the resolution of any fee-related dispute. The Office will work in good faith with PRACTICE FUSION, as the Office determines is necessary in its sole discretion, to assess whether the costs and fees associated with the Oversight Organization are reasonable in light of the benefits provided, and shall determine in its sole discretion whether any disputed costs and/or fees are reasonable.

18. **Indemnification**: PRACTICE FUSION shall provide an appropriate indemnification agreement to the Oversight Organization with respect to any claims arising out of the performance of the Oversight Organization's duties.

Dated at Burlington, in the District of Vermont, this 26th day of January, 2020.

UNITED STATES OF AMERICA

CHRISTINA E. NOLAN
United States Attorney

By:

MICHAEL P. DRESCHER
OWEN C.J. FOSTER
Assistant U.S. Attorneys
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Owen.C.J.Foster@usdoj.gov
Michael.Drescher@usdoj.gov

Accepted and agreed to:

Eric L. Jacobson, Esq.
Practice Fusion, Inc.

Joshua Levy, Esq.
Christine Moundas, Esq.
Aaron Katz, Esq.
Patrick Welsh, Esq.
Ropes & Gray, LLP
Counsel to Practice Fusion, Inc.

12