# Exhibit G

# Additional Compliance Terms



# U.S. Department of Justice

*United States Attorney*
*District of Vermont*

---

*United States Courthouse and Federal Building*
*Post Office Box 570*
*Burlington, Vermont, 05401-0570*

*(802) 951-6725*
*Fax: (802) 951-6540*

January 26, 2020

Mr. Joshua S. Levy
Ropes & Gray LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199

      Re:    *United States v. Practice Fusion, Inc.*
              Additional Compliance Terms, Exhibit G To Practice Fusion, Inc. DPA

Dear Mr. Levy:

This letter ("Letter Agreement") sets forth the Additional Compliance Terms contemplated by Paragraph 25 of the Deferred Prosecution Agreement (the "DPA") between Practice Fusion, Inc. and the United States Attorney for the District of Vermont (the "Office"). In exchange for Practice Fusion's full performance of the terms contained within this Letter Agreement and the DPA entered into by Practice Fusion, Inc., the United States and Practice Fusion hereby agree as follows:

**I.**    **Civil Settlement Agreement with Practice Fusion**

Pursuant to the Civil Settlement Agreement entered into between Practice Fusion and the United States, Practice Fusion will pay to the United States and individual states a monetary settlement. In exchange, as set forth in the Civil Settlement Agreement, the United States is releasing certain claims it has against Practice Fusion (the "Civil Release").

## II.     Deferred Prosecution Agreement

Separately, Practice Fusion and the Office have entered into the DPA pursuant to which the Office will file a criminal information charging Practice Fusion with two criminal offenses relating to its interactions with an extended release opioid ("ERO") company (the "Information"). Upon successful completion of the term of the DPA, the United States agrees to seek dismissal, with prejudice, of the Information filed against Practice Fusion.

## III.    Who Is Bound by Agreement

This Letter Agreement is binding upon the Office and Practice Fusion.

## IV.     Term of Agreement

This Letter Agreement is effective for a period beginning on the date on which the final signatory of the DPA executes the DPA ("Effective Date"), and shall be binding for a period of three years from the Effective Date.

## V.      Compliance Measures

Practice Fusion hereby agrees to the following Compliance Measures.

### A.     Clinical Decision Support Compliance Program Addendum

Practice Fusion shall comply with the terms of the Clinical Decision Support Compliance Program Addendum to this side letter set forth under **Addendum 1**. The Clinical Decision Support Compliance Program Addendum is also **Exhibit D** to the DPA.

### B.     Oversight Organization Mandate Addendum

Practice Fusion shall comply with the terms of the Oversight Organization Mandate Addendum to this side letter set forth under **Addendum 2**. The Oversight Organization Mandate Addendum is also **Exhibit E** to the DPA.

### C.     HIPAA And The Federal Trade Commission Act Cooperation

2

Practice Fusion shall cooperate fully with the Federal Trade Commission (FTC) and the Department of Health and Human Services Office for Civil Rights (OCR) with respect to any inquiries or review undertaken by those offices with respect to the conduct alleged in this global settlement. Such cooperation shall include, but not be limited to, providing necessary documents, information, and witnesses as may be required by either the FTC and/or OCR to conduct such review, including, but not limited to, with respect to issues relating to Practice Fusion's compliance with HIPAA and the Federal Trade Commission Act. Practice Fusion shall provide fully truthful, accurate, and candid information in interacting with either the FTC and/or OCR.

D. <u>Health IT Functionality And Compliance Terms</u>

1. *Data Export Functionality.* Practice Fusion shall, within 60 days of this Letter Agreement, engage, at its own expense, its ONC-ACB and ONC-ATL to review and re-test its current compliance with the data export functionality required for certification under the 2015 Edition electronic health record certification criteria set forth in 45 C.F.R. § 170.315(b)(6). In connection with such testing Practice Fusion shall disclose to its ONC-ACB and ONC-ATL all technical and/or structural issues impacting the ability of users to utilize data export functionality.

2. *Bug List.* Practice Fusion shall maintain on its customer portal a current and comprehensive version of its bug list, which includes, but is not limited to, bugs relating to any certification capabilities, patient safety, interoperability, and data portability. The bug list shall specify the nature of the bug and the date the bug was first reported to, or identified by, Practice Fusion. In addition to its routine processes for detecting and addressing bugs, Practice Fusion shall also conduct bi-annual reviews of bug lists, service tickets and customer notifications relating to the performance of Practice Fusion's software to ensure that in all functionalities, capacities, and

3

workflows Practice Fusion's software is performing in-the-field in full compliance with its intended scope and with certification criteria (if applicable).

3.  *Patient Safety.*  Practice Fusion shall review its policies and procedures, and where necessary implement enhanced policies and procedures, training, and processes, to ensure patient safety risks are identified and users appropriately and timely notified of patient safety issues, including by posting such issues and resolution specifics on Practice Fusion's customer portal. Practice Fusion shall ensure adequate systems to detect, identify, and record potential issues impacting patient safety.  Such issues, for example, could include (a) transmission, retention, or display of inaccurate prescriptions, incorrect drug, diagnoses, or lab codes in connection with medication lists, problem lists, labs or imaging, drug-drug or drug-allergy checks, ePrescriptions, or CCDAs, (b) incorrect patient information appearing within the records displayed to providers, or in visit summaries provided to patients, (c) failure to transmit or receive imaging or laboratory orders or results, (d) inaccurate imaging or laboratory orders or results, (e) drug database or medical vocabularies not being updated, (f) patient records and/or medical information appearing under the name of another patient.

4.  *Code Retention.*  Practice Fusion shall retain all versions of its code that are utilized and/or relied upon in connection with any testing, certification, or surveillance relating to any Governmental program, including any program or regulation providing or applying incentives or penalties or any certification program.

## VI. Remedies for Breach

A.  Practice Fusion and the United States agree that the failure to adhere to the terms of the Additional Compliance Terms set forth in this Letter Agreement may result in the imposition

of Stipulated Penalties in accordance with this section entitled Remedies for Breach, and/or grounds for termination of the DPA.

B. Stipulated Penalties shall be calculated as follows: $15,000 per day for each day Practice Fusion fails to adhere to the Additional Compliance Terms set forth in Section V.

C. If the Office determines that Practice Fusion is in violation of the HIPAA Cooperation requirement (Section V.C) or the Health IT Functionality and Compliance Terms (Section V.D), the Office may, in lieu of demanding Stipulated Penalties for such violation(s) under this Agreement, pursue all remedies available to it under the breach provisions of DPA.

D. If the Office determines that Practice Fusion is in violation of the Clinical Decision Support Compliance Program (Section V.A; Addendum 1) or the Oversight Organization Mandate related to clinical decision support programs (Section V.B; Addendum 2), the Office may, in lieu of demanding Stipulated Penalties for such violation(s) under this Agreement, pursue all remedies available to it under the breach provisions of DPA.

E. Should the United States determine that Practice Fusion has breached this Letter Agreement, and prior to pursuing the remedies described in Sections VI.A through VI.D, the Office shall provide written notice to Practice Fusion of that determination (the "Written Notice"). Such Written Notice shall set forth in reasonable detail: (a) the provision(s) breached; (b) the approximate date of the breach; (c) a description of the breach sufficient to permit Practice Fusion to cure or respond (as described below); and (d) an indication of which remedy the Office intends to pursue (Stipulated Penalties or termination of the DPA). If the Office seeks Stipulated Penalties, the Written Notice must also include (e) the amount of Stipulated Penalties claimed by the Office as of the date of the Written Notice, and (f) an explanation of how the Office calculated the Stipulated Penalties amount. After receiving such Written Notice, Practice Fusion shall have an

opportunity to make a presentation to the Office to demonstrate that no breach occurred, or to the extent applicable, that the breach should not result in the exercise of the remedies available to the Office under this Agreement because Practice Fusion cured the breach.

F.      If the Office demands Stipulated Penalties, Stipulated Penalties (calculated from the date of breach to the date of payment, or, where applicable, from the date of breach to the date that Practice Fusion cured the violation) shall be payable to the United States within fourteen (14) days, payable as directed by the Office. Practice Fusion agrees that the United States District Court for the District of Vermont shall have jurisdiction over any action to collect such a penalty. If Practice Fusion fails to timely make a payment required in this paragraph, interest (at the rate specified in 28 U.S.C. § 1961) shall accrue on the unpaid balance through the date of payment.

## VII.    Complete Agreement

In addition to the other documents being executed as part of this global resolution, this Letter Agreement, inclusive of its Addenda and Exhibits, sets forth all the terms of this agreement between Practice Fusion and the Office. No amendments, modifications, or additions to this Letter Agreement shall be valid unless they are in writing and signed by the Office, the attorneys for Practice Fusion, and a representative of Practice Fusion duly authorized by Practice Fusion's Board of Directors.

If the foregoing accurately reflects the agreement entered into between the Office and Practice Fusion, and Practice Fusion's Board of Directors has authorized you to enter into this agreement, please sign below and return the original to AUSA Owen C.J Foster or Michael P. Drescher.

Dated at Burlington, in the District of Vermont, this 27th day of January, 2020.

                                                CHRISTINA E. NOLAN
                                                United States Attorney
                                                District of Vermont

By:

                                                OWEN C.J. FOSTER
                                                MICHAEL P. DRESCHER
                                                Assistant U.S. Attorneys
                                                P.O. Box 570
                                                Burlington, VT 05402-0570
                                                (802) 951-6725
                                                Michael.Drescher@usdoj.gov
                                                Owen.C.J.Foster@usdoj.gov

Accepted and agreed to:

Eric L. Jacobson, Esq.
Practice Fusion, Inc.

Joshua S. Levy
Aaron Katz
Christine Moundas
Patrick Welsh
Counsel to Practice Fusion

7

## Addendum 1
## Compliance Addendum

See attached.

8

## Addendum 2
## Oversight Organization Mandate Addendum

See attached.